**HUMPHRIES et al. v. WILEY et al.**
No. 4582.

Court of Civil Appeals of Texas. Texarkana.
Nov. 20, 1934.

Rehearing Denied Nov. 29, 1934.

Bishop & Holland, of Athens, and Lasseter, Simpson & Spruiell, of Tyler, for appellants.

Marsh & Fitzgerald, of Tyler, for appellees.

LEVY, Justice (after stating the case as above).

The appellants present the point of error in canceling the deed of May 21, 1931, conveying a one-half undivided interest in the oil and other minerals under the six acres of land. The granting clause of the deed designates as a grantee "the said C. M. E. Church, and (naming nine individuals) as Trustees of Cool Spring Colored Methodist Church of the County of Smith, State of Texas"; the habendum clause names "the said C. M. E. Church" and "Trustees of the Cool Spring Methodist Church"; and in the warranty clause it runs: "The said Trustees of the Cool Springs Colored Methodist Church and their successors, and C. M. E. Church." An uncertainty or doubt may not be declared as to the name of the real grantee intended to be designated to take the title in fee equally with the trustees named, whether the local church at Cool Springs or the church as a general body at large, which is a corporation. Considering the whole instrument it can be ascertained and be made certain that the name "the said C. M. E. Church" and "C. M. E. Church," as used to describe the grantee church, was not intended to refer and apply to the church as a general body at large, the corporation, as distinguished from the local church, but only to the same "Cool Springs Colored Methodist Church," the local church at that station or place. The words, "the said C. M. E. Church," were intended to designate the same church "Cool Springs Colored Methodist Church." The inference that they designate the same church is strong. In the first part of the deed it was recited that the parties who paid the purchase money for the land were the "Trustees of Cool Springs Colored Methodist Church." And the words, as next used in the granting clause, "said C. M. E. Church," would import the intent to refer to and designate that same local church at Cool Springs. The word "said" means, and is used in the sense only of "before mentioned." And the point of difference between the two names is weak. The first description as given of "Colored Methodist Church" of Cool Spring station is merely imperfect in the omission of the word "Episcopal," and must be so regarded, for it is evident that the name,

the "Colored Methodist Episcopal Church," has long been adopted by the church judicatories, and each and every church, whether incorporated or unincorporated, bears and uses the associate name. In the present case the one local Colored Methodist Episcopal Church at Cool Springs only was intended to be named and designated as the church to take the entire beneficial title. The mention, however, of the name of the local Colored Methodist Episcopal Church at Cool Spring as a grantee would be of no legal force, and would be treated as surplusage, being an unincorporated religious association. For as a matter of pure law an unincorporated religious association, as here appears, is legally incapable in their associate name of taking and holding real property, and must take conveyance, as in this case may be deemed was done, through the intervention of trustees. Methodist Episcopal Church South v. Clifton, 34 Tex. Civ. App. 248, 78 S. W. 732; 23 R. C. L. p. 443; 54 C. J. p. 47. The legal effect attaching to the deed must put at rest any question of whether or not the entire legal title to the land was vested in the trustees named, and their successors duly appointed or elected for the future, but solely for the use and benefit of the members of the Colored Methodist Episcopal Church of Cool Springs, in Smith county.

The deed to the trustees of the local church at Cool Springs was, as may be seen, a simple conveyance of the property without any express trust terms or conditions. They are not by any language creating the trust charged with the performance of any active and substantial duties with respect to the control, management, and disposition of the property for the benefit of the church, the beneficial owner. The trustees are made a mere passive depository of the property with no active duties to perform. The trust, in effect, is classed as an express passive or naked trust. 3 Pomeroy Eq. Jur. (4 Ed.) § 988; 65 C. J. § 16, p. 227. Hence the right of management and sale of the property by the trustees must come from the members of the local congregation in whom the beneficial title is vested or as the canons or discipline of such religious denomination made applicable so provide. 54 C. J. § 122 and § 128, pp. 60, 63; and other authorities. And the accepted rule is that none less than all the trustees in such passive or naked trust can make a valid conveyance of the trust property. Dodge v. Lacey (Tex. Civ. App.) 216 S. W. 400; Wilbur v. Almy, 12 How. 180, 13 L. Ed. page 945. It is quite certainly shown as a fact that the sale and convey-

ance by the trustees named therein to J. C. Humphries on May 21, 1931, was made by such trustees acting purely on their own initiative and without any direction and without any consent of the members of the local church. Neither the quarterly conference nor any other judicatory of the church having control of the local church directed or authorized the sale and conveyance of the royalty by the trustees. Therefore the trustees had no power to convey the mineral rights, a part of the corpus of the trust property. 65 C. J. § 594, p. 730; Crawford v. Land Improvement Co. (Tex. Civ. App.) 201 S. W. 233; Hicks v. Armstrong (Tex. Civ. App.) 142 S. W. 1195; Wisdom v. Wilson, 59 Tex. Civ. App. 593, 127 S. W. 1128. It is urged by appellants, however, that, although the deed may be invalid when first executed, yet (1) the appellees are estopped to contend that the mineral deed did not convey title to the royalty, and (2) the deed was ratified by executing a division order and receiving benefits thereunder, and by the quarterly conference on May 3, 1931, and by the signing and approval by the presiding elder of the church. It is believed the evidence does not warrant sustaining the points so made. The general rule applicable and governing is quoted from 65 C. J. at page 646: "Acts within the scope of the authority of the trustees bind the trust property, and the beneficiaries. A trustee can not make a binding admission against the interest of the cestui que trust, * * * and an estoppel may not be invoked against a trustee as to any acts or omissions not within the authority of the trustee." The relationship of trustee and cestui que trust is distinguishable from that of principal and agent. Cory Bros. & Co., Lim., v. U. S. (D. C.) 43 F.(2d) 589. As stated in Bank of Washington v. Railway Co. (Tex. Civ. App.) 293 S. W. 599, 603: "A trustee is in no sense an agent, for an agent acts for his principal. A trustee is generally a person in whom some estate or property is vested for another. When a trustee as such undertakes to contract independently as a trustee he becomes liable personally, unless he stipulates to the contrary." The local church society collectively, and apart from the trustees, did not by words or conduct in any wise induce J. C. Humphries to believe that they would acquiesce in or offer no opposition to the sale of the royalty by the trustees. A valid title in appellants may not in the facts be predicated upon ratification in the signing of the division order. For only three and not all of the nine trustees acting as a unit signed the division order and accepted the money from the Boone Refining Company. There was no authority for only three, and less than the nine trustees in a body, to act, and the purchaser may not be presumed to be ignorant or in any wise misled in that respect. And it further affirmatively appears that the quarterly conference, acting in its authority, in effect expressly repudiated and did not acquiesce in or ratify the purported sale or transaction by the trustees. The conference by minutes of record in regular meeting as a body ordered suit in the purpose of relief against the unauthorized sale and execution of deed, to entirely remove cloud upon the title. The fact that the conference voted the two ways shown by the minutes is not of controlling significance as at all events amounting to a sufficient acquiescence, preventing either the right of equitable remedy to which appellees would otherwise be entitled, or precluding the asserting legal title and rights to the property. The last vote at the regular meeting is controlling in special circumstances, as the trial court had the right to conclude. That last vote was amendatory for the good reason stated by the Bishop, of the former vote, and was timely made, and annulling of the transaction and directing proceedings to commence for relief. Likewise the signing by the presiding elder added no more legal force and efficiency, in view of the evidence, than the execution by the trustees. He had no authority to originate or direct or confirm the sale. And the action of the conference, who had control of the presiding elder, in ordering suit, would have the effect to, not approve, but wholly disapprove as well, the act by the presiding elder as the acts of the trustees. No point can be made that the trustees, apart from the members of the congregation and the conference, could ratify the sale. As laid down in State Exchange Bank v. Simms (Tex. Civ. App.) 266 S. W. 1111, an officer having no authority to bind a corporation by contract cannot ratify the contract so made by him by accepting, approving, or acting upon it. It is thought that the trial court was warranted in concluding from all the evidence that the appellees were entitled to the property (if the legal right thereto was established, as it was), and that they were not defeated by estoppel in the right of remedy or from asserting legal title to the property.

It is concluded that the appellant C. L. Porter may not be deemed an innocent purchaser in the circumstances. He had means of knowledge sufficient to charge him with the infirmity of the deed by the trustees.

The personal judgment against the appellants may not be set aside, as lacking evidence to support it. The money they received from the oil produced was legally, by reason of the invalidity of the deed, the property of appellees. There is proof going to show that the money was from the royalty.

It is a sufficient answer that the letter in evidence of May 28th written by the Boone Refining Company, stating amounts paid for oil runs from the well, was offered in evidence and was not objected to by appellants, and besides that the statement in the letter respecting the money paid to appellants does not purport to be in the class of strictly hearsay evidence. The letter purports to make statement of the specific fact of the amount paid to appellants as within the own knowledge of the writer.

The judgment is affirmed.