**BROWN et al. v. WARFIELD.**

No. 15172.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 10, 1950.

Rehearing Denied Dec. 8, 1950.

Lane, Hall & Lane, of Marshall, for appellants.

Abney, Abney & Baldwin, of Marshall, for appellee.

McDONALD, Chief Justice.

In the year 1933, a Negro woman named Margaret Jackson, who called herself Madam Jackson, arrived in the City of Marshall, Texas. Shortly afterwards she took a leading part in the organization of certain religious societies, which were called the Coronation Clubs. There were four of such societies. Considering the evidence in the light most favorable to the verdict of the jury, it is sufficient to show that the members of the Coronation Clubs, at the behest of Madam Jackson, embarked on an enterprise of raising funds for the purpose of buying a tract of land and building thereon a church. A committee of representatives from the Clubs was appointed for the purpose of selecting a building site. The committee selected a site which was recommended by Madam Jackson, and reported back to the Clubs. Money in an undetermined amount was turned over to Madam Jackson, and the owners of the lot executed a warranty deed bearing date of July 25, 1933, which conveyed the lot to Margaret Jackson. Thereafter a brick building was erected on the land, on the first floor of which were certain rooms which Madam Jackson occupied as living quarters from the time the building was completed until the time of her death in 1948, and on the second floor of which were several rooms, including one room which was used as an auditorium and was large enough to seat several hundred persons.

Shortly after the completion of the building, formal dedication services were held, although the evidence is somewhat vague as to whom or what the building was dedicated. There is evidence, although of a rather uncertain nature, that the members of the Coronation Clubs organized themselves into what was known as the Christian Baptist Church, and that the latter organization regularly held religious services under the guidance and sponsorship of Madam Jackson from about 1935 until the year 1945. Since Madam Jackson, her followers, and all of those who testified in the suit, referred to the building as the Temple, we shall hereafter refer to it by that appellation.

In the year 1945, at what was probably one of the regular Sunday services of the congregation, Madam Jackson announced to those present that she had always been a Methodist, and that she was going home, meaning that she was going to reenter the Methodist Church, and she invited those present to join with her in such a move. The evidence is to the effect that about fifty of those who were present did join with Madam Jackson in affiliating themselves with the Methodist Church and paid each the sum of $1.00 as proposed by Madam Jackson, and that from that time forward religious services were regularly conducted in the Temple by Madam Jackson and her followers who went with her into the Methodist Church, their organization being known as the Jackson Temple A. M. E. Church.

In the year 1948, Madam Jackson died. Shortly after her death the appellee Jack Warfield, her son and only heir, moved into the living quarters in the Temple which had theretofore been occupied by Madam Jackson. The members of the Jackson Temple A. M. E. Church continued to hold religious services regularly in the Temple up to the time of trial of this case.

Certain persons who had been duly elected as the trustees of the Jackson Temple A. M. E. Church brought this suit to recover title and possession of the property in question, seeking to establish a resulting trust, based on the claim that the members of the Coronation Clubs had raised the money for the purchase of the lot, that the money was turned over to Madam Jackson, that she purchased the lot in 1933 for the purpose of erecting thereon a church as had been agreed upon by herself and the members of the Coronation Clubs, and that she therefore took the title to the lot in trust for the benefit of the members of the Coronation Clubs; that the Coronation Clubs thereafter, by action of their members, became the Christian Baptist Church; that in 1945 the Christian Baptist Church, by action of its members, became the Jackson Temple A. M. E. Church; and that the Jackson Temple A. M. E. Church is therefore entitled to be regarded as the benefi-cial owner of the property as the successor of the original beneficiaries.

Findings of the jury in answer to special issues were to the effect that: 1. Members of the Coronation Clubs contributed moneys or other things of value to Madam Jackson prior to July 25, 1933 (the date of the deed to Madam Jackson) for the purpose of acquiring the property in question. 2. Members of the Coronation Clubs entered into an oral agreement with Madam Jackson prior to July 25, 1933, by which Madam Jackson agreed to acquire the property in question with moneys or other things of value contributed by members of the Coronation Clubs. 3. Madam Jackson purchased the property in question pursuant to the oral agreement just mentioned. 4. Members of the Coronation Clubs organized themselves into the Christian Baptist Church in 1935. 5. Subsequent to the organization of the Christian Baptist Church and at the time it was active, a majority of the members present at a meeting voted to affiliate themselves into a new church to be known as the Jackson Temple A. M. E. Church. 6. John Brown, and others who joined with him in bringing this suit, were the duly elected trustees of the Jackson Temple A. M. E. Church.

On motion of the defendant Jack Warfield for judgment notwithstanding the verdict, the trial court rendered judgment that the plaintiffs take nothing, on the theory that he should have instructed a verdict to such effect.

The plaintiffs have appealed, relying on numerous points of error.

■■ It appears to us that the evidence, when examined in the light most favorable to the verdict, is sufficient to show that Madam Jackson originally acquired the lot and held it in trust for the benefit of the members of the Coronation Clubs. There was testimony to the effect that she actively sponsored the entire program of raising the money and purchasing the lot for the purpose of building a church on it, and there was evidence of declarations made by her after the lot was acquired to the effect that the members had paid for it and

that it belonged to them. In such a situation it was not necessary, in order to establish a resulting trust, to show that Madam Jackson specifically agreed she would hold title to the lot as trustee for the Coronation Clubs. It was enough that she urged that the money be raised for such purpose, that the money was turned over to her for such purpose, and that she did acquire title to the lot. A resulting trust is a species of implied trust, one that arises from what the parties did, not from what they said, and equity will presume an intent in such cases to hold property for those who are rightfully entitled to it. 42 Tex.Jur., p. 635.

There is no direct evidence showing whether or not Madam Jackson used any funds of her own in the erection of the building on the lot, or whether such building was entirely paid for by contributions from members of the church and other persons. There is evidence that Madam Jackson stated to various persons after the Temple was completed that it was built by the members of the Church and that the property belonged to the members of the Church. If she acquired title to the vacant lot as trustee for the members of the Coronation Clubs, the beneficial ownership of the property became fixed as of that time. If, in such situation, Madam Jackson used any of her own funds in the erection of the building, the burden rested upon appellee to show such fact and such other facts as might entitle him to any relief with respect thereto.

The evidence shows without dispute that the Coronation Clubs were, in their nature, religious organizations. Although the evidence does not expressly show whether they were incorporated or unincorporated or whether they were independent bodies or belonged to some ecclesiastical organization, the reasonable implications are one way to the effect that they were unincorporated and that they were not members of any parent organization. There is no showing with respect to whether or not they had any formal rules or by-laws and there is no direct evidence of any formal action taken by the Coronation Clubs by way of converting themselves into and becoming the Christian Baptist Church. However,

the testimony is undisputed that at least most of the members of the Coronation Clubs went into the Christian Baptist Church at the time the church was completed, and that the disbanding of the Coronation Clubs was contemporaneous with the organization of the Christian Baptist Church. There is nothing to show that the Coronation Clubs as such continued any program of worship or activities after the organization of the Christian Baptist Church, and the evidence is undisputed that the latter organization conducted religious worship regularly from the time the Temple was completed until the year 1945. We not only consider that the evidence was sufficient to support findings by the jury which would warrant the erection of a resulting trust in favor of the Coronation Clubs, and which would warrant a holding that the Christian Baptist Church was the successor of the Coronation Clubs, but we believe that no other reasonable conclusion could be drawn from the evidence.

We have had considerable difficulty in deciding whether or not the evidence in the record was sufficient to show such action by the Christian Baptist Church as would warrant the Jackson Temple A. M. E. Church being treated as the successor of the Baptist Church, to the extent that the Methodist Church became the beneficial owner of the property.

There is no direct evidence showing whether or not the Christian Baptist Church had any written rules, regulations or by-laws under which it conducted its affairs, and the evidence is meager concerning the happenings on the occasion mentioned when Madam Jackson told the members of the congregation that she was returning to the Methodist Church and invited those who would to go with her. The only reasonable implications to be drawn from the evidence are to the effect that the Christian Baptist Church was one which followed the congregational form of government, and that the applicable principle of government is that of majority rule. It is quite evident from the record as a whole that this religious enterprise was dominated from its inception by Madam Jackson, and that all who participated in

the enterprise appeared to recognize hers as the controlling voice. There is no direct evidence to show that the meeting in question was called pursuant to notice to the members of the time, place and purpose of the meeting, and there is no direct evidence showing whether a formal vote was taken. It is undisputed that Madam Jackson declared in clear terms what she was going to do, and in equally clear terms stated that those who wanted to join with her in the move could do so and those who did not could go their separate ways. It is undisputed that the newly organized Methodist Church immediately began to hold meetings in the Temple, and that the Methodist Church, or at least the Methodist Church together with Madam Jackson, had exclusive use, possession and control of the Temple from 1945 until the time of Madam Jackson's death. Ministers were regularly assigned to the Methodist Church by the proper authorities of the Methodist organization. There is not a hint in the evidence of any effort by those who did not go into the Methodist Church to exercise control over or to use the Temple, and there is no evidence, direct or otherwise, showing that the Christian Baptist Church continued in existence as an active congregation after the occasion when Madam Jackson announced that she was returning to the Methodist Church. The burden of course was upon the plaintiffs to show the trust, and to show that the Methodist Church was the successor in interest of the Coronation Clubs, but the evidence related above, together with the complete absence of any evidence of continued existence of the tian Baptist Church, as an organized entity, after 1945, coupled with evidence of the fact that the Methodist organization used the Temple exclusively for religious purposes after 1945, at least supports an implication, if it does not compel it, that the action taken at the time in question was an action of the Christian Baptist Church as a group as distinguished from an action of some of its individual members. Under elemental rules, a mere secession of some members of the Christian Baptist Church would not affect the title of the Church to its property. The controlling inquiry is whether those persons who organized the enterprise appeared to recognize hers

Jackson Temple A. M. E. Church occupied a status of nothing more than former members of the Christian Baptist Church, or whether the Christian Baptist Church, by appropriate action of its members, converted itself into the Jackson Temple A. M. E. Church. 36 Tex.Jur., pp. 864-865, and cases there cited.

In view of all we have said, it is our belief, and we hold, that the trial court was not warranted in rendering judgment notwithstanding the verdict on the theory that he should have granted an instructed verdict. However, there has been such a lack of full development of some of the pertinent facts of the case, particularly those pertaining to the alleged act of the Christian Baptist Church in converting itself into the Jackson Temple A. M. E. Church, that it appears to us that justice would be better subserved by remanding the case to the trial court for another trial than by rendering judgment here on the verdict of the jury.

Appellee Warfield complains in several respects of the form and substance of some of the issues submitted to the jury. In view of the fact that the evidence may not be the same on another trial, we shall not undertake to decide whether the court's charge was subject to any of the objections made to it by appellee.

The judgment of the trial court is reversed and the cause is remanded for another trial.