L. C. BROWNING et al., Appellants,

v.

E. L. BURTON et al., Appellees.

No. 10249.

Court of Civil Appeals of Texas.

Austin.

Nov. 17, 1954.

Rehearing Denied Dec. 8, 1954.

Taylor & Taylor, Temple, for appellants.

Saulsbury, Skelton, Everton, Bowmer & Courtney, Temple, for appellees.

GRAY, Justice.

This suit was brought as a class action and grew out of a controversy between two groups of a colored Methodist Church in Temple, Texas. Each group claims to be entitled to the possession of Lot 3, Block 3 of the S. E. Bills Addition to said City of Temple, together with the church building located thereon, the parsonage and other church properties.

The history and the facts pertinent to the inquiry here are: About the year 1816, there was organized in the State of Pennsylvania the African Methodist Episcopal

Church. This church has extended its organization into the several states including Texas. The laws of the church are contained in its Book of Discipline. In Texas a bishop is the head of the church, the State is divided into districts over which the bishop appoints presiding elders and under the presiding elders are local churches in charge of a local pastor appointed in keeping with the Discipline which regulates the affairs of the local church. About the year 1900, Wayman Chapel, of the local church in Temple, Texas, was established. This church conducted all of its affairs under the regulations imposed by the Discipline. The members of this church were members of the mother church (African Methodist Episcopal Church) and all local pastors were ordained ministers of that church and were regularly assigned to the local church in Temple in accordance with the provisions of the Discipline. However there is no showing in the record that the local church was ever formally dedicated to the African Methodist Episcopal Church by any ceremony although the Discipline prescribes such ceremony.

In 1921, the local church acquired Lot 3 of Block 3 of S. E. Bills Addition to the City of Temple, Texas, by a deed from Hulen P. Robertson to named persons "Trustees of Wayman Chapel African Methodist Church of Temple, Texas, and their successors in office." The only condition contained in this deed was a reservation, by the grantor, of a vendor's lien on the lot conveyed to secure the payment of notes executed by the named persons as trustees. These notes and other indebtedness of the local church appear to have been paid by the local church. Also this deed is not in the form prescribed by the Discipline for deeds to the African Methodist Episcopal Church which form provides that the property conveyed shall be forever held in trust for that church. The local church has never so deeded the property to the African Methodist Episcopal Church.

After Lot 3, supra, was acquired by the local church a brick church building was erected on the lot and was furnished with furnishings adequate for church services to be held in the building. The corner stone of this building bears the inscription "Wayman Chapel, AME Church." "AME Church" stands for African Methodist Episcopal Church and that church will be later referred to by those initials.

The record does not show what ceremony, if any, was held at the laying of this corner stone although the Discipline prescribes such a ceremony.

At the time this controversy arose the membership of the local church was approximately 394 members.

In 1951, appellant, L. C. Browning, then a regularly ordained minister of the AME Church was appointed pastor of the local church and served as such pastor until November 2, 1953. At the church service on Sunday morning, October 25, 1953, L. C. Browning announced that a church conference would be held the following night but he did not state the purpose of the meeting. At this meeting various matters were discussed and the meeting was held open until the following Monday night, November 2. At the church service on Sunday morning, November 1, 1953, L. C. Browning announced that a church conference would be held the following night. He did not state the purpose of this meeting and did not state that the meeting of the previous Monday night was held open.

These meetings were attended by approximately 40 members of the local church.

On November 2, 1953, prior to the meeting that night, L. C. Browning had an attorney prepare a deed, dated that date, conveying the above lot and premises to the Independent Methodist Episcopal Church of Houston, Texas. This church is a distinct and separate entity from the AME Church and is entirely independent from it. The deed recited that named persons "Trustees of Wayman Chapel African Methodist Episcopal Church, Temple, Texas," for a consideration of $10 and other good and valuable consideration paid, conveyed Lot 3, supra, to the Independent

Methodist Episcopal Church of Houston, Texas.

At the meeting on Monday night,[1] November 2, resolutions were adopted withdrawing from Wayman Chapel, AME Church, withdrawing its property and funds from that church and authorizing the trustees to convey the lot and church properties to the Independent Methodist Episcopal Church of Houston, Texas. After this resolution was passed the deed was signed by all but three of the trustees, these three refusing to sign it.

By letter dated November 2 and mailed November 3, L. C. Browning notified the bishop of his withdrawal from the AME Church. He then joined the Independent Church.

L. C. Graves, bishop of the Independent Methodist Episcopal Church of Houston, Texas, paid L. C. Browning $10 upon delivery of the above deed and appointed him pastor of the local church. L. C. Graves as bishop of the Independent Methodist Episcopal Church and Nanie B. Aycox as secretary of that church, by a deed dated November 9, 1953, conveyed Lot 3, supra, to the "Trustees of Wayman Chapel Independent Methodist Episcopal Church of Temple, Texas."

When the action taken at the meeting of November 2, 1953, was discovered by the authorities of the AME Church the pulpit of the local church was declared vacant and B. S. Lane was appointed its pastor. B. S. Lane came to Temple and demanded the keys to, and the possession of, the church and its properties. This demand was refused and this suit was filed seeking to set aside the deed to the Independent Methodist Episcopal Church of Houston, Texas, praying for a temporary and permanent injunction restraining L. C. Browning and the other defendants from interfering with plaintiffs' possession, use and ownership of the church properties and requiring defendants to deliver all of such properties to plaintiffs.

A temporary injunction as prayed for by plaintiffs was granted. After the temporary injunction was granted appellants deposited a jury fee and placed the cause on the jury docket. Thereafter the cause came on for trial on its merits and plaintiffs made their motion for a summary judgment on the pleadings and supporting affidavits on file. This judgment was granted and judgment as prayed for by plaintiffs was entered.

As we understand appellants' brief they argue that: (1) the AME Church had no interest in the property in question, and (2) the local church withdrew from the AME Church on November 2, 1953. Their one point of error is: "There was an issue of fact as to whether or not any of the members of Wayman Chapel African Methodist Church of Temple, Texas, withdrew from said church and the court committed error in refusing to submit that issue to a jury."

It is not disputed in the record before us that from 1900, the time when Wayman Chapel of the local church was organized, until October, 1953, its affairs were conducted under the provisions of the Discipline of the AME Church. During all of this time the members of the local church were members of the AME Church and so regarded themselves. The pastors of the local church were ordained ministers of the AME Church and were appointed under the regulations of the Discipline of that church. L. C. Browning himself was such a minister and came to the local church as pastor by appointment made under the Discipline of the AME Church. During all of this time there was never a question raised in the church, or outside, as to whether the local church was affiliated with the AME Church. The local church contributed to the AME Church and supported its institutions. It never at any time or in any manner repudiated or questioned the AME Church or its Discipline and never at any time aligned itself with the Independent Methodist Episcopal

1. Purporting to be by the local church.

Church of Houston, Texas. The first attempt of any member to separate himself or the local church from the AME Church. was at the meeting held on November 2, 1953.

However there is some evidence (given by L. C. Browning) that in 1921 some members of the local church then objected to the use of the word "Episcopal" in the deed of 1921 because the local church did not want to be under the general church, that is they did not want to be governed "by an Episcopal head or a bishop." The force of this evidence is overcome by the subsequent acts: the members of the local church were members of the AME Church; the business and affairs of the local church were conducted under the Discipline; the deed to the independent church purports to be the act of the "Trustees of Wayman Chapel African Methodist Episcopal Church, Temple, Texas," and the deed from L. C. Graves and Nanie B. Aycox above mentioned purports to convey Lot 3 to the "Trustees of Wayman Chapel Independent Methodist Episcopal Church of Temple, Texas."

 Unquestionably L. C. Browning and the other members of the local church who are appellants here united themselves with the AME Church (Browning as a minister of that church) and thereby consented to its laws, and their rights and obligations are to be determined by the laws of that church—the Discipline. 45 Am.Jur. p. 731, Secs. 13 and 14. 36 Tex. Jur. p. 854, Sec. 12.

 Appellants of course had the right to withdraw from the local church but in so doing they relinquished their rights in the abandoned church. 45 Am.Jur. p. 733, Sec. 16.

The Discipline provides for the termination of membership in the church "by withdrawal, expulsion or death" and provides that when "a preacher in good standing wishes to withdraw and unite with another church, his Ministerial Orders shall be surrendered to the Annual Conference. * * *" It provides for the election of trustees for the local church, prescribes their qualifications, provides that no person who is not a regular member of the church shall be eligible as a trustee and that upon his separation from the church he shall immediately cease to be a trustee except when he is joint security for debt. They are made members of the quarterly conference and are answerable to that body for their official conduct. It further provides that the board of trustees may take steps to effect a transfer of property, real and personal, "provided that such transfer has been approved by resolution in the quarterly conference of said church, and by the conference trustees of conference in which property is located." and further that "No property shall be sold except with the approval of the quarterly conference by resolution." There is no such resolution in the record before us.

The Discipline makes provision for a church conference, and because appellants rely on this conference called by the then pastor of the local church, we quote from the Discipline:

"A Church Conference is a meeting of the members and minister residing and worshipping at a given place for the consideration and transaction of local church business, the minister in charge being the presiding officer.

"The duties of the conference may be many and varied, such as, calling the roll of membership for the correction of the same; recommending persons to the Presiding Elder and members of the Quarterly Conference for license to preach the Gospel; adopting petitions to the Bishop, District and Annual conferences for the ordination of local deacons and elders for the use of the church; encouraging church love, patriotism, and unity; lecturing upon explaining the duties of the members toward the Dollar Money Fund, Easter, Endowment, and Children's Day collections; giving members information of what is being done in church work, mission fields, church schools and colleges;

presenting the claims of our church literature and periodicals; benefits of supplying themselves with hymn books, Disciplines, etc., as well as having literary societies, missionary societies, and seeking the cooperation of the members in measures of benevolence and mercy for the sick, poor, and needy; enlisting their efforts to build up the Sabbath School; searching out poor children, and engaging in whatever will promote the kingdom of God on earth.

"2. The pastor ought to report to the Church Conference his labors, burdens, cares, and point out places where the members, or a portion of them, could work for the glory of God. The officers, also, should give information of their work, explain the indebtedness of the Church and agree upon rallies for the payment of the same; establish additional prayer meetings, either in the Church or at the houses of members; find places, if possible, where exhorters can be employed and applicants for license to preach or exhort may exercise their gifts beforehand, by permission of the pastor."

■ The meeting as called by the pastor, L. C. Browning, was termed a church conference; however, there is no other meeting at which the trustees purported to act. In fact this is the only meeting referred to in the record and the Discipline provides for a transfer of church property by the trustees. We think the trustees were not authorized to transfer the church property for the reason that the transfer was not approved by the quarterly conference and by the conference trustees. 76 C.J.S., Religious Societies, p. 777, Sec. 29e(2).

■ Appellants lay stress on the fact that the 1921 deed from Hulen P. Robertson conveying Lot 3, supra, was to named persons as trustees for African Methodist Church of Temple, Texas, and not to such named persons as trustees for the African Methodist Episcopal Church of Temple, Texas. From the record before us it is certain that the property has at all times up to November 2, 1953, been used to support the AME Church and no other church. In any event the 1921 deed does not impose on the named trustees, or their successors, any substantial duties with respect to the control, management, and disposition of the property for the benefit of Wayman Chapel African Methodist Church of Temple, Texas. Therefore the right to sell the property must come from the members of the religious organization in whom the beneficial title is vested or as the laws of that group may direct. Brown v. Clark, 102 Tex. 323, 116 S.W. 360, 24 L.R.A., N.S., 670. Humphries v. Wiley, Tex.Civ. App., 76 S.W.2d 793, 797, error dism.

The Discipline of the AME Church has been at all times recognized as the law of the local church, and appellants say that up to November 2, 1953 they were members of that church and recognized the Discipline as the supreme law of the local church. They not only say that at the time the resolutions in question here were passed they were members of the AME Church, (the doctrines and faith of which church were the common, accepted and adopted doctrines and faith of the local church) but they say they withdrew from the AME Church and now undertake to impose on that church new doctrines and faith—those of the independent church.

■ Appellants' point of error cannot be sustained. Even if the jury should make a finding favorable to appellants and if it be conceded that appellants withdrew from the AME Church then the purported transfer of the church property cannot be given effect for the reason that the requirements of the Discipline for such transfer were not met as above stated. On the other hand if appellants be correct in their argument that the 1921 deed conveyed the property to the African Methodist Church of Temple, Texas, and that the AME Church had no control over the property, then they are squarely met with the proposition that approximately 350 members remained loyal to the local church

and only approximately 40 members withdrew. These 40 members by their withdrawal could not destroy the identity of the local church and could not take the properties of that church with them into an independent organization. Such withdrawal would not affect the title of the local church to its property. Brown v. Clark, supra. Brown v. Warfield, Tex. Civ.App., 234 S.W.2d 264, error ref. 76 C.J.S., Religious Societies, § 71b, p. 850. 36 Tex.Jur., Sec. 20, pp. 864–866. In Brown v. Clark, supra, the Court said [102 Tex. 323, 116 S.W. 364]:

> "The deed for the property was made to the trustees of the Cumberland Presbyterian Church at Jefferson, Tex. It expressed no trust nor limitation upon the title. The property was purchased by the church and paid for in the ordinary way of business, and there is not attached to that property any trust either express or implied. It follows, we think, as a natural and proper conclusion, that the church to which the deed was made still owns the property, and that whatever body is identified as being the church to which the deed was made must still hold the title."

Our holding is that the deed of November 2, 1953, was of no force and effect; that the right to the possession of the church properties remained with the local church and that there was no genuine issue of fact presented. We are not called upon to, and do not, further construe the deed of 1921 conveying Lot 3 to the Trustees of Wayman Chapel African Methodist Church of Temple, Texas.

The judgment of the trial court is affirmed.

Affirmed.