CHURCH OF GOD IN CHRIST, INC.,
Plaintiff-Appellee,

v.

Reverend A. L. CAWTHON et al.,
Defendants-Appellants.

No. 74–1213.

United States Court of Appeals,
Fifth Circuit.

Feb. 3, 1975.

George Sladczyk, Jr., Robert P. Walker, Port Arthur, Tex., for defendants-appellants.

Gerald J. Goodwin, Houston, Tex., for plaintiff-appellee.

Before RIVES, GODBOLD and GEE, Circuit Judges.

GODBOLD, Circuit Judge:

This is a factional dispute over the possession, use and control of a small church building and lot in Port Arthur, Texas.

The property in question was acquired in 1921 by conveyance to named persons as trustees for the First Church of God in Christ of Port Arthur, Texas (the "local church").

In 1922 the plaintiff Church of God in Christ, Inc., (the "national church") was incorporated in the State of Tennessee pursuant to a resolution adopted by the General Assembly of that church conducted in Memphis, Tennessee. The incorporation papers reveal that the Church of God in Christ was already carrying on worship in several states and that the persons designated as incorpora-

tors were a number of "overseers" from these several states. The headquarters of the church at all times has remained at Memphis.

For many years after 1922 the national church was under the general supervision of its founder, Bishop Mason. The organizational structure was somewhat loosely maintained. A local church could be "brought in" to the national church by its pastor or a bishop. A bishop could "set in order" a local church by examining it and if he found it accepted the doctrines and rules and regulations of the national church, then it could become a member of the national church. No certificates were issued to local churches evidencing their membership in the national church.

The 1922 charter was amended several times. By around 1970 there were approximately 10,000 member churches in the United States.

In the 1950's or 1960's the local church adopted the new name White Rose Church of God in Christ of Port Arthur, Texas. Following the death of Bishop Mason in the 1950's factional differences arose. In litigation in the State of Tennessee the national church was required to tighten its structure and procedures and to formalize the previously somewhat unstructured ties with its member churches. As a part of this overhauling of the church structure a new (amended) charter was filed in Tennessee in 1972.

In 1972 the national church appointed a new presiding bishop over the Southeast Texas District, in which Port Arthur is located. The former bishop challenged the authority of the national church to remove him and the power of the new bishop as well. Litigation ensued in the state courts of Texas over this dispute, which ultimately was decided adversely to the former bishop. While this controversy was going on, the defendant Rev. A. L. Cawthon was serving as pastor of the local church. He refused to recognize the authority of the new bishop and on August 8, 1972 was removed. A new pastor was appointed and for several weeks conducted services in the church without incident.

While his removal was pending Rev. Cawthon formed the opinion that if the local church were incorporated the new bishop could not remove him. In late October, after his removal, he moved forward with the incorporation. He met with what he described as the largest group of members, composed of persons "following him," and they voted to incorporate. A nonprofit Texas corporation was formed called "The White Rose Church of God In Christ of Port Arthur, Texas." Rev. Cawthon and two other persons favorable to him "became" trustees in a business session conducted by Rev. Cawthon.[1] On November 27, 1972 these new trustees executed a deed purporting to convey the local church property to the new corporation. Subsequently, on December 4, by letter from his attorney to the attorney for the new bishop, Rev. Cawthon renounced all allegiance to the national church. These events led to several confrontations at the local church between the factions led, respectively, by the new minister and by Rev. Cawthon as to which was entitled to use and enjoyment of the property. This litigation ensued, and during its pendency the two factions have used the church on alternate Sundays.

The District Court, following a nonjury trial, found:

> It is undisputed that since 1922, up until 1972, no one had questioned the fact that the White Rose Church of God in Christ was in fact a member of and subservient to the National Church. All objective and subjective criteria support this conclusion.

Also the court found that the purported deed of November 27 to the new Texas corporation was void because executed by persons without authority or capacity to convey the property. Underlying this conclusion, the court noted that the deed was executed nearly four months after

---

1. While the exact date is unclear we infer that this was after Rev. Cawthon's removal.

Rev. Cawthon's removal, following which he had no voice or control over the property of the local church. Further, the court noted that under the charter of the national church a conveyance of real estate of a local church was required to be approved by the bishop of Southeast Texas, which approval had not been received. Also, we note that a member church may withdraw from the national church only with approval of the General Assembly.

The District Court held that Rev. Cawthon and his followers could withdraw from the national church and form an independent group, but that when they did they relinquished their rights in and to the local church property. It concluded that the national church has a "property interest" in the local church which is subject to protection by the court, and it enjoined the defendants from interfering with the local church, its present pastor and officers and their use of the church property for services, and from purporting to act on behalf of the local church, and enjoined them from holding meetings in the church property without the consent of the pastor, from disposing of church property, and from attempting to exercise possessory control over the church premises. On appeal the defendants have directed their contentions to the matter of use and control of the church premises rather than to those parts of the judgment relating to holding offices in the local church and acting on its behalf. We affirm the decision of the District Court.

The evidence adequately supports the finding that the local church was a member of and subservient to the national church. Rev. Cawthon repeatedly acknowledged that the White Rose Church was "a part of the national church."[2] He acknowledged that the local church was part of the Southeast Texas District of the national church. He acknowledged that the local church made reports to the national church and that as pastor

he operated under the national church's constitution as amended in 1952, and specifically the section thereof requiring that deeds conveying church property contain a clause providing that the premises be maintained and disposed of as a place of worship for the ministry and membership of the national church subject to the doctrine, laws and usages of the [national] church as from time to time declared by its General Assembly.[3] That clause, or a similar one, had appeared in the constitution of the national church as early as 1926 or 1927. Rev. Cawthon acknowledged that the Port Arthur property was "supposed to be" subject to this provision but asserted that "nobody has ever gone by it." Rev. Cawthon, in his capacity as pastor of the local church, was a credentials-holding delegate to the 1971 General Assembly of the national church and to the 1972 General Assembly that adopted the amended constitution and by-laws.

The plaintiff relies, as did the District Court, upon Browning v. Burton, 273 S.W.2d 131 (Tex.Civ.App.1954), which involved a suit between two disputing local factions. A local church for many years had been affiliated with and conducted its affairs under the discipline of a national church. The members of the local church considered themselves members of the national church, ministers were ordained by the national church and appointed by it to serve in the local church. The alignment with the national church was never questioned until a faction of the local church, led by the incumbent pastor, sought to withdraw from the national church and affiliate with another national church, and trustees executed a deed of the church property to the local church under its new affiliation. The faction loyal to the national church filed suit. The Texas Court of Civil Appeals held that the withdrawing members could not destroy the identity of the local church and could not take the property of that church

---

**2.** Qualifying this on one occasion by the phrase "under the leadership of Bishop Ranger [the ousted bishop of Southeast Texas]."

**3.** Another article of the 1952 constitution provides: "No Board of Trustees may divert property from the use of the Church of God in Christ."

with them into a new and independent organization. It held that right to possession of the church property remained with the local church, which it identified as the body of the congregation desiring to continue affiliation with the national church, and held also that the rights and obligations of its members were to be determined by the discipline and laws of the national church, including provisions for withdrawal from membership.

The defendants rely upon *African M. E. Church v. Independent African M. E. Church,* 281 S.W.2d 758 (Tex.Civ.App. 1955, err. reg. N.R.E.). But in that case the pastor and entire membership of the local church withdrew from the national church pursuant to a discipline which permitted each individual member to withdraw at will and provided that title to church property is in the local church. The entire congregation, withdrawn and reorganized, was the same body of persons for whom the trustees were holding title. The court recognized and distinguished *Browning.*

In the instant case, there were two disputing factions in the local congregation but the plaintiff is the national church, which seeks to protect the interests in the property which it enjoys as part of a hierarchical church organization, and seeks also to exclude possession, use and interference by the local faction that has renounced adherence to the plaintiff national church.

■ Having concluded on what we have held to be adequate evidence that the local church was a member of and subservient to the national church, the District Court was correct in enjoining the dissident faction from attempting to exercise acts of possessory control over the local church property and from interfering with the local church property and with the conduct of services therein by the local faction loyal to the national church, and in holding that the deed to the newly created corporation was void. *Browning* does not bar that result but supports it. In *Browning,* with the national church not a party to the suit, the court held the local group loyal to the national church to have the right to possession and control. Here the national church is a party and, as a church of hierarchical polity, has established its right to possession and control.[4]

■ The 1972 amended constitution of the national church provided for the first time for issuance of certificates of membership to local churches conferring or exemplifying membership in the national church. The Port Arthur local church had not received a certificate. The General Secretary of the national church explained that it was intended that every local church receive a certificate and that his office was engaged in issuing them but had not been able to complete the mechanical task.[5] We do not view the provision for a certificate as abrogating the prior relationship between the national church and a local church acquired by long years of less formalized affiliative participation.

The contention that jurisdictional amount was not properly proved is without merit and requires no discussion.

The decision of the District Court is affirmed.

---

4. *See* Watson v. Jones, 13 Wall. 679, 80 U.S. 679, 722, 726, 20 L.Ed. 666, et seq. (1871); Kedroff v. St. Nicholas Cathedral, 344 U.S. 94, 118, 73 S.Ct. 143, 97 L.Ed. 120 (1952); Presbyterian Church v. Hull Church, 393 U.S. 440, 448, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969); Maryland and Virginia Churches v. Sharpsburg Church, 396 U.S. 367, 90 S.Ct. 499, 24 L.Ed.2d 582 (1970); Northside Bible Church v. Goodson, 387 F.2d 534, 547 (CA5, 1967).

5. His office was, as he succinctly put it, "short handed and short monied."